

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

00032

GERALD C. MANN
ATTORNEY GENERAL

Hon. J. E. McDonald, Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:

Opinion No. O-1412
Re: Does the Department of Agriculture in
meeting the responsibilities imposed
upon the Commissioner by H. B. 12 have
the authority to use a portion of the
contingent of the Jack and Stallion
Division to meet the expenses incurred
in placements and transportation of
the jacks and stallions?

Your request for an opinion of this Department,
on the following situation, has been received:

"In the administration of H. B. 12, Acts of
the First Called Session of the 45th Legislature,
the Commissioner of Agriculture is charged with
the responsibility of placing state owned jacks
and stallions with caretakers on an annual lease
basis. These placements are started on July 1st
of each fiscal year and during the year it is ne-
cessary to make many transfers of these animals
to new caretakers. Also it happens, or at least
it has happened in the past, some of these ani-
mals have become unfit for services. They must
be taken over by the Commissioner and turned
over to the Board of Control for the board to
dispose of same.

"Naturally there is an expense incurred in
the placements and transportation of such ani-
mals, such as gasoline, oil, car and trailer
repairs and room and meals.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"The completed appropriation bill does not
provide any traveling expense. Will you please
advise if the Department of Agriculture in meet-
ing the responsibilities imposed upon the Com-
missioner by the provisions of H. B. 12 has the
authority to use a portion of the contingent of
the Jack & Stallion Division to meet the above
mentioned expense.

"Finally, we are charged with the above men-
tioned responsibilities as pointed out, and if
we meet such responsibilities and incur such
expenses, how are we to pay the same?"

Article 51 of Vernon's Annotated Civil Statutes,
(H. B. 12, Acts of the 45th Leg., 1937) provides for the
leasing of state-owned jacks and stallions; the appoint-
ment of caretaker; rules and regulations; title to the
animals to remain in state; allocation to Texas Prison
System; annual rental charge; bond; contracts, a spe-
cial Jack and Stallion Fund; disposition of said fund;
transferal of fund; and use of fund.

We quote below certain provisions of this Act,
which indicate a legislative intent that the monies in
the special Jack and Stallion Fund be used for expenses
incurred in the leasing and distribution, transporta-
tion and disposition of state-owned jacks and stallions.
The following provisions of Article 51 will be helpful
in throwing light upon the appropriation for the Jack-
Stallion Division in the General Departmental Appropria-
tion Bill of the Forty-sixth Legislature, i. e., Senate
Bill 427:

"Section 1. From and after the date of Sep-
tember 1, 1937, the Commissioner of Agriculture
of the State of Texas is hereby directed and au-
thorized to distribute throughout the State of
Texas, on a lease basis as hereinafter provided,
the jacks and stallions purchased by the State
of Texas * * *"  The Commissioner of Agriculture
shall adopt and carry out reasonable rules
and regulations with respect to the leasing and
distribution, care, use and maintenance of such

Hon. J. E. McDonald, Commissioner, page 3

animals. Provided further that the title of
all such jacks and stallions hereinbefore men-
tioned shall be and remain in the State of
Texas.* * *

"Sec. 2. From and after the effective date
of this Act the Commissioner of Agriculture
shall distribute the jacks and stallions afore-
said throughout the State of Texas where there
is most need shown to competent and capable
caretakers who shall agree and pay to the State
of Texas the sum of Thirty Dollars ($30) in ad-
vance as an annual rental for the use of such
jack or stallion, as the case may be, and who
shall first enter into a written contract with
the Commissioner of Agriculture all such condi-
tions and terms as may be determined by the
Commissioner. * * *

"Sec. 3. The money derived from the leasing
of the animals hereinabove mentioned shall be
deposited by the Commissioner of Agriculture in
the State Treasury where it shall be set up as
a 'Special Jack and Stallion Fund' to be used
by the Commissioner to pay the salaries of two
(2) competent supervisors at not to exceed Eigh-
teen Hundred Dollars ($1800) per year each for
salaries and who shall receive the actual and
necessary traveling expenses while away from
Austin in the performance of their duties, which
expenses shall not exceed amounts allowed other
state employees under the terms and provisions
of Senate Bill 138, Acts of the Forty-fifth Leg-
islature, Regular Session, 1937, and in no event
shall the salaries and expenses herein author-
ized exceed the amount collected annually from
the lease or hire of animals as herein provided,

"Sec. 4. All moneys now on hand and accru-
ing to the Jack and Stallion Account under H. B.
779, Acts of the Forty-fourth Legislature, Regu-
lar Session, and amended by H. B. 8, Chapter 495,
Forty-fourth Legislature, Third Called Session,

CC035

are hereby transferred to the Special Jack and
Stallion Fund to be used by the Commissioner of
Agriculture for making refunds on breedings
heretofore reported in conformity with refund-
ing provisions of H. B. 779, Acts of the Regular
Session of the Forty-fourth Legislature, and
for the payment of all other expenses incurred
in the administration of this Act, subject to
the biennial appropriation for the year ending
August 31, 1939.* * *"

The Legislature recognized that the leasing, dis-
tribution, transportation and disposition of state-owned
jacks and stallions would entail considerable expense.
It made its intent clear that the monies in the Jack-
Stallion Fund were to be used for the payment of all
expenses incurred in the administration of the Act.
The jacks and stallions of the state are a valuable
property and demand considerable attention. While in
possession of the lessee, the state-owned jacks and
stallions might or might not receive adequate care. It
is a responsibility of the Commissioner of Agriculture
to see that state-owned jacks and stallions are proper-
ly maintained and receive proper treatment. A lessee
of a jack or stallion is not required by law to pay the
expense attached to the lease proceeding, the transpor-
tation charged, or the care of the animal while it is
being transported. The jacks and stallions inspector
must see that the animals are properly cared for when
they are not in the possession of the lessee or when
they are being transferred from one lessee to another,
if and when such transfers occur.

We have exhaustively treated the Jack-Stallion
Appropriation under Senate Bill 427 in our opinion
No. O-1220. Giving effect to the Governor's veto, we
held that there were a specific appropriation of $1800.
per year for an inspector (64-b), and $1950. a year for
rent, heat, light, postage, printing, telephone, sup-
plies, and contingent, etc., and in addition to the
itemized appropriation, a lump sum appropriation of "all
fees and/or unexpended balances" in the Jack-Stallion
Fund "for the enforcement" of House Bill 12.

Hon. J. E. McDonald, Commissioner, page 5

The question before us is whether or not monies in the $1950. item designated as "rent, light, heat, postage, printing, telephone, supplies and contingent" (underscoring ours) may be used by the Commissioner of Agriculture in meeting the responsibilities imposed upon him under H. B. 12 in the placement and transportation of the state-owned jacks and stallions and in taking care of expenses incurred in making placement and transportation.

Expenses connected with the leasing, placement, and transportation of jacks and stallions, such as gasoline, oil, car and trailer repairs, are necessary and essential to the enforcement of H. B. 12. Such expenses are difficult to estimate and itemize. Yet they were definitely within the contemplation of the Legislature. As such they fall properly within the category of contingent funds which are to be spent not for enumerated items or purposes, but for contingencies not capable of being specifically and definitely set out by the Legislature.

As for traveling expenses incurred in connection with leasing, placement and transportation, we refer you to conference opinion No. 3089 of this Department written by Hon. Richard W. Fairchild. This opinion authorizes traveling expenses to be paid out of "contingent expenses" where a department or division of a department is not provided specifically with an item for "traveling expenses." On the basis of this opinion the Department of Agriculture may use the "contingent fund" of the Jack-Stallion Division for traveling expenses, such as mileage, room and meals, incurred in the leasing, transportation and placement of state-owned jacks and stallions.

Trusting that we have fully answered your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Dick Stout
Assistant
APPROVED OPINION COMMITTEE
BY B. W. B. CHAIRMAN

DS:ob    APPROVED OCT. 4, 1939

W. F. MOORE
FIRST ASSISTANT    ATTORNEY GENERAL